UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**ANDREW JACKSON**                              **CASE NO. 2:20-CV-00676**

**VERSUS**                                       **JUDGE JAMES D. CAIN, JR.**

**LOTTE CHEMICAL LOUISIANA L L C ET AL**         **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is "Defendant Perin Resources, LLC's Motion to Dismiss" (Doc. 20) wherein Defendant Perin Resources, LLC ("Perin") moves to have the claims made by Andrew Jackson against it dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. On October 20, 2020, the Court heard arguments from counsel for the parties regarding the Motion to Dismiss. For the reasons that follow, the Motion to Dismiss will be denied.

## FACTUAL ALLEGATIONS

The Petition for Damages filed in state court makes the following allegations. Plaintiff Andrew Jackson is a tractor-trailer driver who used Quality Carrier, Inc.'s equipment to pick up and deliver bulk commodities.[1] Lotte Chemical Louisiana, LLC ("LCLA") and LACC LLC US ("LACC") own and operate as a joint venture, a chemical plant in Westlake Louisiana.[2]

---

[1] Doc. 1-2, ¶¶ 1(d) and 2. Quality is a for-hire interstate motor carrier of property.
[2] Id. ¶ 4.

Perin supplied products for LACC and LCLA. Perin, LACC and LCLA had an agreement to deliver chemicals to the LACC and LCLA plant in Westlake.[3] Quality directed Jackson to provide the delivery service to the LACC/LCLA plant in his capacity as Quality's independent contractor.[4]

On or about April 4, 2019, Jackson was delivering an acid-based product procured by Perin to the LACC/LCLA plant via a tanker truck which belonged to Quality.[5] After off-loading the acid product, Jackson was disconnecting the compressed air supply when the compressed air valve suddenly and violently ejected from the tank.[6] The valve struck Jackson in the face causing severe injuries to his nose, facial bones, lips and teeth.[7]

## **STANDARD OF LAW**

The court may exercise jurisdiction over a non-resident only when the defendant has sufficient minimum contacts with Louisiana such that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). These contacts must be of a texture and quality such that the defendant would reasonably anticipate being haled into court in Louisiana. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75, 105 S.Ct. 2174 (1985).

Due process requires the defendant to have "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the

---

[3] Id. ¶ 6.
[4] Id.
[5] Id. ¶ 7.
[6] Id. ¶ 14.
[7] Id. ¶ 15.

forum state, and the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Jurisdiction may be general or specific.

Where a defendant has "continuous and systematic general business contacts" with a forum state, the court may exercise general jurisdiction over any action brought against that defendant. *Luv N' Care, Ltd v. Insta-Mix, Inc., et al,* 438 F.3d 465 (5th Cir. 2006).

"Specific jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities." *Walk Haydel,* 517 F.3d at 243. Louisiana Revised Statute 13:3201 requires a liberal interpretation in favor of finding jurisdiction. *Adcock v. Surety Research & Inv. Corp.,* 344 So.2d 969 (1977); *Latham v. Ryan*, 373 So.2d 242 (La.App. 3d Cir. 1979). A single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. *Ham v. La Cienega Music Co.,* 4 F.3d 415, 415-16 (5th Cir. 1993); *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (4th Cir. 1991).

The party invoking the jurisdiction of a federal court bears the burden of establishing minimum contacts justifying the court's jurisdiction over a non-resident defendant. *Guidry v. Tobacco Co. Inc.,* 188 F.3d 619 (5th Cir. 1999). The party seeking jurisdiction must present a *prima facie* case that the defendant is subject to personal jurisdiction. *Freudensprung v. Offshore Tech. Servs, Inc.,* 379 F.3d 327, 342-43 (5th Cir. 2004). To determine whether a *prima facie* case exists, "this Court must accept as true [the Plaintiff's]

uncontroverted allegations and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id.*

A federal court may exercise personal jurisdiction over an out-of-state defendant only to the extent permitted by the long-arm statute of the state in which its sits and the Fourteenth Amendment's due process clause. *Paz v. Brush Engineered Materials, Inc.,* 445 F.3d 809, 812 (5th Cir. 2006). The Louisiana long-arm statute provides that Louisiana courts may exercise jurisdiction over non-residents. LA. STAT. ANN. § 13:3201. The Louisiana long-arm statute is coextensive with the limits of due process. *E.g., Laird v. Deep Marine Technology, Inc.,* 2004 WL 2984282, *1 (E.D. La. Dec. 7, 2004).

Due process requires (1) minimum contacts purposefully directed at the forum state, (2) a nexus between the contacts and the claims, and (3) that the exercise of jurisdiction will be fair and reasonable. *McFadin v. Gerber,* 587 F.3d 753, 759-60 (5th Cir. 2009); see also *ITL Int'l, Inc. v. Constenla, S.A.,* 669 F.3d 493, 498 (5th Cir. 2012).

It is the plaintiff's burden to satisfy the first two prongs, with the burden then shifting to the movant to show that an exercise of jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros, Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006). To determine whether the "fair play" prong is met, the courts look to five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interest, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 759-60. "It is rare to say the assertion

of jurisdiction is unfair after minimum contacts have been shown." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 615 (5th Cir. 2008).

    Louisiana's long-arm statute, in pertinent part, provides as follows:

(A)    A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

1. Transacting any business in this state.
2. Contracting to supply services or things in this state.
3. Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
4. Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

    Comment (d) provides:

    "Transacting business", . . . is a term which is much broader than "doing business," as defined by earlier Louisiana cases, and the phrase "does * * * business" . . . conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase "engaged in a business activity" of R.S. 13:3471(1).

Louisiana Revised Statute 13:3201(A). Pursuant to Louisiana Revised Statute 13:3201(A)(2), an out-of-state defendant contracting with a forum state plaintiff creates sufficient minimum contact for specific jurisdiction when it "takes purposeful and affirmative action, the effect of which is to cause business activity foreseeable by (the defendant), in the forum state." *Mississippi Interstate Exp., Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 (5th Cir. 1982).

"The Louisiana Long-Arm Statute is to be interpreted liberally in favor of finding jurisdiction... and is to extend to the full limits of due process under the fourteenth amendment." *Wuasha v. Shale Development Corp.,* 667 F.2d 483, 486 (5th Cir. 1982) (citing, *inter alia, Austin v. North American Forest Products*, 656 F.2d 1076, 1089 (5th Cir. 1981); *Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630, 639-41 (5th Cir. 1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, (1981)).

## LAW AND ANALYSIS

Perin is a Texas Limited Liability Company with its principal place of business in Texas.[8] In his Declaration, Perin President Mark Brueggeman declares that Perin did not own, maintain or have control or supervision over the truck or trailer that delivered the acid, nor did it employ Jackson. Perin facilitated the purchase of acid for LACC, a Texas company, to be delivered to LACC's affiliate, LCLA. [9] Perin located a supplier of the chemical through Quad Chemical ("Quad"), which is located in Virginia. Quad contacted Cornerstone Chemical Company "(Cornerstone"), a Delaware Corporation who arranged the freight for the ultimate delivery of the acid to LCLA.[10]

Perin argues that this Court cannot exercise personal jurisdiction over it as a non-resident defendant because Perin does not have sufficient minimum contacts with Louisiana for purposes of either general or specific jurisdiction. Perin suggests that it has not purposefully directed its activities toward Louisiana or purposefully availed itself of the privileges of conducting activities in Louisiana. Perin argues that the claims in this

---

[8] Defendant Perin Declaration of Mark A. Brueggeman, President of Perin, ¶ 3, Doc. 20-2.
[9] Id. ¶ 21.
[10] Id. ¶¶ 28 and 29.

lawsuit do not arise out of or result from any forum-related contact of Perin, and the exercise of personal jurisdiction over Perin would offend traditional notions of fair play and substantial justice.

Plaintiff alleges in his Complaint, that Quality Carriers, Inc. had an agreement with Perin, LACC and/or LCLA to deliver chemicals to the LACC/LCLA plant in Calcasieu Parish. At the hearing on the instant motion, counsel for Perin informed the Court that Perin was the owner of the acid product during its transit through the state of Louisiana. Perin was listed on the Bill of Laden as the "consignee" and served as the intermediary between the seller and the ultimate buyer. Perin argues that it was not the manufacturer of the acid product, however, Perin was aware that its product would travel through interstate commerce with its ultimate destination in Westlake, Louisiana at the LACC/LCLA plant.[11]

A defendant has the minimum contacts required by due process where his purposeful activities directed at the forum state have invoked the benefits of that state's laws, so the he reasonably could anticipate being hauled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559 (1980). Placement of products into the stream of commerce may satisfy the minimum contacts prong of the due process analysis. *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081 (5th Cir. 1984); *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir. 1980).

Perin had an agreement with LACC and LCLA to procure and deliver the acid product to Westlake, Louisiana, albeit through a carrier. In addition to knowing that it

---

[11] See Bruggeman Declaration at ¶ 12 ("Perrin[sic] Resources LLC provided no instructions to Quad Chemical regarding the subject product, other than specifying the date, time, and location of delivery." Doc. 27-1.

would be delivered to Louisiana, Perin admitted to the Court that it owned the acid product during transit in the State of Louisiana. Even though the acid product itself was not involved in Mr. Jackson's incident that is the subject of this lawsuit, the transport of that product and the delivery of same gave rise to Mr. Jackson's injury. The Court finds that there is specific jurisdiction over Perin; by placing the acid product into the stream of commerce and having an agreement to deliver the product to Louisiana, Perin availed itself of the benefit of this state's laws, and therefore it does not offend traditional notions of fair play and substantial justice for this court to exercise personal jurisdiction over Perin.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss for lack or personal jurisdiction will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 22nd day of October, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**